**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| JOHN CORITSIDIS, TINA CORITSIDIS, and KAREEN MCKENZIE, <br><br> Plaintiffs, <br><br> -v- <br><br> K'HAL BNEI TORAH OF MOUNT IVY and UNITED STATES OF AMERICA, <br><br> Defendants. | Case No. 22-cv-10502 (CS) |

**MEMORANDUM OF LAW IN SUPPORT OF DEFENDANT K'HAL BNEI TORAH OF MOUNT IVY'S MOTION TO DISMISS**

Yehudah L. Buchweitz
David Yolkut
Shai Berman
WEIL, GOTSHAL & MANGES LLP
767 Fifth Avenue
New York, New York 10153
(212) 310-8000

Mark I. Pinkert
WEIL, GOTSHAL & MANGES LLP
1395 Brickell Avenue, Suite 1200
Miami, FL 33131
(305) 577-3148

*Counsel for Defendant K'hal Bnei Torah of Mount Ivy*

May 30, 2023

# TABLE OF CONTENTS

**Page**

Preliminary Statement .................................................................................................. 1

Statement of Facts ...................................................................................................... 3

    A.    KBT Settles With The Town And Obtains Zoning Approval For A House Of Worship ................................................................................................ 3

    B.    Plaintiffs Sue KBT To Declare RLUIPA Unconstitutional ..................................... 3

    C.    Plaintiffs File An Amended Complaint, Now Claiming Public And Private Nuisance .......................................................................................................... 4

    D.    KBT Informs Plaintiffs It Does Not Operate A House Of Worship At 56 Riverglen .......................................................................................................... 5

Legal Standards .......................................................................................................... 6

Argument ................................................................................................................... 7

I.     Plaintiffs Lack Article III Standing ........................................................................ 7

    A.    Plaintiffs Allege Generalized Grievances, Not Personal And Concrete Injuries ........................................................................................................... 7

    B.    Plaintiffs Do Not Identify Any Conduct By KBT That Could Have Caused Injuries ........................................................................................................... 9

    C.    This Court Cannot Remedy Any "Injury" By Declaring KBT A Nuisance ......... 10

II.    Plaintiffs Fail To Plead A Jurisdictional Basis For their Purely State-Law Claims Against KBT .................................................................................................... 12

III.   KBT Is Not A Private Or Public Nuisance ........................................................... 16

    A.    Plaintiffs Cannot Claim Private Nuisance Based On "Occasion[al]" Inconvenience .............................................................................................. 16

    B.    Plaintiffs Cannot Claim Public Nuisance Based On Intermittent Parking Issues ........................................................................................................... 18

IV.   KBT Is Entitled To Fees Under N.Y. Anti-SLAPP Law Because Plaintiffs Intended To Prevent KBT From Exercising Its Rights .................................................... 21

Conclusion ............................................................................................................... 24

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*532 Madison Ave. Gourmet Foods, Inc. v. Finlandia Ctr., Inc.*,
  96 N.Y.2d 280 (2001) ...................................................................................17, 18, 19

*Achtman v. Kirby, McInerney & Squire, LLP*,
  464 F.3d 328 (2d Cir. 2006)..........................................................................13, 14, 15

*Amidax Trading Grp. v. S.W.I.F.T. SCRL*,
  671 F.3d 140 (2d Cir. 2011)...................................................................................7

*Anderson v. Elliot*,
  807 N.Y.S.2d 101 (2d Dep't 2005).........................................................................18

*Aurecchione v. Schoolman Transp. Sys., Inc.*,
  426 F.3d 635 (2d Cir. 2005)....................................................................................6

*Caldarola v. Town of Smithtown*,
  2010 WL 6442698 (E.D.N.Y. July 14, 2010) *adopted by* 2011 WL 1336574
  (E.D.N.Y. Apr. 04, 2011)........................................................................................20

*California v. Texas*,
  141 S. Ct. 2104 (2021).............................................................................................10

*Cangemi v. United States*,
  13 F.4th 115 (2d Cir. 2021) ..............................................................................14, 17

*Carnegie–Mellon Univ. v. Cohill*,
  484 U.S. 343 (1988)..................................................................................................16

*Chevron Corp. v. Naranjo*,
  667 F.3d 232 (2d Cir. 2012).....................................................................................14

*Clapper v. Amnesty Int'l USA*,
  568 U.S. 398 (2013).........................................................................................8, 9, 10

*Coal. of Watershed Towns v. EPA*,
  552 F.3d 216 (2d Cir. 2008).....................................................................................11

*Cohen v. Postal Holdings, LLC*,
  873 F.3d 394 (2d Cir. 2017).............................................................................13, 14

*Cooper v. Templeton*,
   2022 WL 4367445 (S.D.N.Y. Sept. 21, 2022)......................................................7

*Copart Indus., Inc. v. Consol. Edison Co. of N.Y., Inc.*,
   41 N.Y.2d 564 (1977) ..........................................................................16, 18

*Denton v. Hernandez*,
   504 U.S. 25 (1992)..................................................................................7

*Dep't of Army v. Blue Fox, Inc.*,
   525 U.S. 255 (1999)................................................................................14

*Domen Holding Co. v. Aranovich*,
   1 N.Y.3d 117 (2003)...............................................................................17

*Franklin v. Massachusetts*,
   505 U.S. 788 (1992)................................................................................11

*Gallop v. Cheney*,
   642 F.3d 364 (2d Cir. 2011)....................................................................7, 10

*Goldman v. Reddington*,
   2021 WL 4099462 (E.D.N.Y. Sept. 9, 2021) ...............................................21

*Guru Nanak Sikh Soc'y v. County of Sutter*,
   456 F.3d 978 (9th Cir. 2006) ..................................................................22

*Hamilton v. Westchester Cnty.*,
   3 F.4th 86 (2d Cir. 2021) .....................................................................6, 7

*Hanna v. Motiva Enters., LLC*,
   839 F. Supp. 2d 654 (S.D.N.Y. 2012)....................................................19, 20

*Hollingsworth v. Perry*,
   570 U.S. 693 (2013).................................................................................8

*Icahn Sch. of Med. at Mount Sinai v. Health Care Serv. Corp.*,
   234 F. Supp. 3d 580 (S.D.N.Y. 2017)........................................................19

*Informed Consent Action Network v. Becerra*,
   595 F. Supp. 3d 70 (S.D.N.Y. 2022).........................................................10

*Kennedy v. Bremerton Sch. Dist.*,
   142 S. Ct. 2407 (2022)...........................................................................22

*Lee v. Doe*,
   2022 WL 204355 (S.D.N.Y. Jan. 24, 2022) .................................................8

*Lewis v. Casey*,
    518 U.S. 343 (1996).............................................................................................................12

*Linardos v. Fortuna*,
    157 F.3d 945 (2d Cir. 1998)...............................................................................................12

*Lindsay v. Gov't Emps. Ins. Co.*,
    448 F.3d 416 (D.C. Cir. 2006)...........................................................................................16

*Lowth v. Town of Cheektowaga*,
    82 F.3d 563 (2d Cir. 1996)................................................................................................20

*Lujan v. Defs. of Wildlife*,
    504 U.S. 555 (1992)...........................................................................................................9

*Lyman v. Village of Potsdam*,
    228 N.Y. 398 (N.Y. 1920).................................................................................................20

*Lyndonville Sav. Bank & Tr. Co. v. Lussier*,
    211 F.3d 697 (2d Cir. 2000)..............................................................................................15

*M.S. v. Brown*,
    902 F.3d 1076 (9th Cir. 2018) ..........................................................................................11

*Machowski v. Auburndale Props., Inc.*,
    574 F. Supp. 3d 776 (C.D. Cal. 2021) ..............................................................................16

*Maddox v. Bank of N.Y. Mellon Tr. Co., N.A.*,
    19 F.4th 58 (2d Cir. 2021) .........................................................................................7, 8, 9

*In re Methyl Tertiary Butyl Ether (MTBE) Prod. Liab. Litig.*,
    725 F.3d 65 (2d Cir. 2013)................................................................................................18

*Molski v. EOS Est. Winery*,
    2005 WL 3952249 (C.D. Cal. July 14, 2005) ...................................................................16

*Morrison v. Nat'l Austl. Bank Ltd.*,
    547 F.3d 167 (2d Cir. 2008), *aff'd*, 561 U.S. 247 (2010) .................................................6

*NAACP v. AcuSport, Inc.*,
    271 F. Supp. 2d 435 (E.D.N.Y. 2003) ..............................................................................21

*Palmer v. Amazon.com*,
    51 F.4th 491 (2d Cir. 2022) ..............................................................................................19

*Promisel v. First Am. Artificial Flowers Inc.*,
    943 F.2d 251 (2d Cir. 1991)..............................................................................................15

*Quattlander v. Ray*,
    2021 WL 5043004 (S.D.N.Y. Oct. 29, 2021) ........................................................17

*Reid v. Kawasaki Motors Corp., U.S.A.*,
    189 A.D.2d 954 (3d Dep't 1993) ........................................................................19

*Semi-Tech Litig. LLC v. Bankers Tr. Co.*,
    234 F. Supp. 2d 297 (S.D.N.Y. 2002) ................................................................15

*People ex rel. Spitzer v. Sturm, Ruger & Co.*,
    761 N.Y.S.2d 192 (1st Dep't 2003) ...................................................................21

*Spokeo, Inc. v. Robins*,
    578 U.S. 330 (2016) ...........................................................................................7

*Steel Co. v. Citizens for a Better Env't*,
    523 U.S. 83 (1998) ...........................................................................................11

*SUEZ Water New York, Inc. v. E.I. Du Pont de Nemours & Co.*,
    578 F. Supp. 3d 511 (S.D.N.Y. Jan. 4, 2022) ...............................................18, 19

*Town of New Windsor v. Avery Dennison Corp.*,
    2012 WL 677971 (S.D.N.Y. Mar. 1, 2012) ......................................................17

*TransUnion LLC v. Ramirez*,
    141 S. Ct. 2190 (2021) .......................................................................................9

*United States v. Mitchell*,
    463 U.S. 206 (1983) .........................................................................................14

*Universal Licensing Corp. v. Paola del Lungo S.p.A.*,
    293 F.3d 579 (2d Cir. 2002) .........................................................................12, 13

*Vengalattore v. Cornell Univ.*,
    36 F.4th 87 (2d Cir. 2022) .................................................................................6

*Westchester Day Sch. v. Village of Mamaroneck*,
    504 F.3d 338 (2d Cir. 2007) ............................................................................22

*World Outreach Conf. Ctr. v. City of Chicago*,
    591 F.3d 531 (7th Cir. 2009) ...........................................................................22

*Zelaya v. J.M. Macias, Inc.*,
    999 F. Supp. 778 (E.D.N.C. 1998) ...................................................................16

**Statutes**

28 U.S.C. § 1331 ....................................................................................................12

28 U.S.C. § 1332 .................................................................................................13

28 U.S.C. § 1367 ...............................................................................13, 14, 15, 16

42 U.S.C 2000cc-2 ............................................................................................13

**Other Authorities**

Fed. R. Civ. P. 12(b) ...........................................................................................6

N.Y. Civ. Rights Law § 70-a(1).....................................................................21, 24

N.Y. Civ. Rights Law § 76-a(1)(a) ....................................................................23

Restatement (Second) of Torts § 822 (1979) .....................................................17

## PRELIMINARY STATEMENT

Plaintiffs in this lawsuit claim that Orthodox Jews gathering and worshipping together causes a public "nuisance" and threatens the community with some "serious health and safety issues." These allegations are insulting, bigoted, and reek of discriminatory animus. They also fail to satisfy the basic elements of a federal lawsuit and should be dismissed accordingly.

Plaintiffs' litigation campaign against Defendant K'Hal Bnei Torah of Mount Ivy ("KBT") began soon after KBT lawfully invoked its federal rights under the Religious Land Use and Institutionalized Persons Act ("RLUIPA") with respect to a zoning application for a house of worship in the Town of Haverstraw, New York. KBT eventually sued the Town for a RLUIPA violation in this Court, but the parties settled and the Town granted the application. Plaintiffs did not intervene in that case, though they had the opportunity to do so. Instead, they filed a separate, collateral lawsuit against KBT—a private entity—seeking to declare RLUIPA unconstitutional.

Recognizing that this approach was futile following the parties' pre-motion conference with the Court, Plaintiffs changed course. Their quixotic challenge to RLUIPA—a 23-year-old federal statute that courts have repeatedly upheld as constitutional—is now directed at the United States; but, in this latest iteration of their lawsuit, Plaintiffs raise new state-law nuisance claims against KBT based on brand new, fanciful allegations that have no basis in law or fact. Plaintiffs now allege that "Defendants" have been parking on both sides of the street overnight and walking at night in dark clothing, endangering the community. And they claim that KBT's town-approved house of worship will "exacerbate" problems for the public. These new allegations are meritless.

*First*, Plaintiffs lack Article III standing, as they do not allege any concrete and particularized injury. Their vague concerns about public health and safety issues are not only unsubstantiated and conjectural (and offensive to boot), they are, at best, generalized grievances that do not confer standing. The sole particularized allegations are that Plaintiffs live close to the

site of KBT's new house of worship and unnamed individuals attending a *different* congregation on their street blocked their driveway. But these are not "concrete" Article III injuries. The allegation that KBT's house of worship will "exacerbate" problems in the future is also unsupported and speculative, not "actual or imminent." **(§ I.A)**. Plaintiffs also do not allege unlawful conduct *by KBT* that could have caused any injury, nor identify any injury that could be redressed by a judgment against KBT. **(§§ I.B-C)**.

*Second*, Plaintiffs offer no basis to invoke this Court's jurisdiction. They cannot claim diversity jurisdiction, as Plaintiffs and KBT are all citizens of New York. And there is no federal-question jurisdiction because Plaintiffs' state-law nuisance claims do not arise under federal law. Plaintiffs also do not invoke the Court's supplemental jurisdiction. Nor could they, as the Court lacks jurisdiction over the remaining claims against the United States. RLUIPA does not provide Plaintiffs with a roving federal cause of action to sue the United States to declare RLUIPA unconstitutional, and the United States has not waived sovereign immunity. Even if such a federal claim existed, moreover, Plaintiffs' ill-defined dispute with the United States over RLUIPA has nothing to do with the alleged nuisance claims against KBT. **(§ II)**.

*Third*, Plaintiffs fail to plausibly allege nuisance. The only possible private nuisance claim arises from a car blocking a Plaintiff's driveway on a few occasions. But this allegation fails to satisfy any of the five elements of a private nuisance under New York law, mainly because it was not a substantial (*i.e.*, continuous) or unreasonable interference. Plaintiffs also do not allege that KBT either intended or caused the blockage, as is required. The public nuisance claim fails for similar reasons. Plaintiffs do not allege a substantial interference with a public right, but only, at best, temporary parking obstructions. Plaintiffs also have not alleged that they suffered the type of special injury that is necessary to bring a nuisance claim on behalf of the public. **(§ III)**.

***Finally***, KBT is entitled to attorneys' fees under the New York Anti-SLAPP statute. Both Plaintiffs' Initial Complaint and its now-operative Amended Complaint lack any basis in law or fact. This litigation can only have been intended to dissuade or punish KBT and its members from petitioning the local government to respect their religious liberties. That improper purpose is laid bare in the numerous anti-Semitic statements—ranging from barely veiled to full-throated—that Plaintiffs saw fit to include in their complaints. At the end of the day, Plaintiffs are unsatisfied with the local political process and the court-approved settlement between the Town and KBT. But neither political dissatisfaction nor xenophobia gives Plaintiffs the right or ability to launch a federal lawsuit, without any colorable basis, as a means to retaliate against KBT.

## STATEMENT OF FACTS

### A.  KBT Settles With The Town And Obtains Zoning Approval For A House Of Worship

KBT is a religious entity serving the Orthodox Jewish community in the Town of Haverstraw, New York. In early 2021, KBT submitted an application to the Town's Planning Board to convert a single-family residence into a house of worship. Am. Compl. ¶ 12. At public hearings, KBT cited RLUIPA in support of its application. *Id*. ¶ 15. The Planning Board's attorney prepared a draft resolution granting site plan approval, in part relying on RLUIPA. *Id*. ¶ 20. But the Planning Board ultimately voted against approving the resolution. *Id*. ¶ 22.

After its application was denied, KBT sued the Town, the Board, and three Board members under RLUIPA in this Court. *Id.* ¶¶ 23-27. The parties filed a stipulated settlement, entered by this Court and so ordered, and the Town approved KBT's zoning application. *See* So Ordered Stipulation of Settlement, *K'Hal Bnei Torah of Mt. Ivy v. Town Of Haverstraw*, No. 7:22-cv-09630-CS (Feb. 16, 2023), ECF No. 12.

### B.  Plaintiffs Sue KBT To Declare RLUIPA Unconstitutional

Plaintiffs Kareen McKenzie, John Coritsidis, and Tina Coritsidis are residents of the Town

of Haverstraw and live on the same street as KBT's new house of worship, which the Town has now approved. Compl. ¶¶ 1-3. They were not parties to KBT's lawsuit against the Town and never sought to intervene. Instead, Plaintiffs filed their own lawsuit against KBT in December 2022, while KBT's lawsuit against the Town was still ongoing.

In their Initial Complaint, Plaintiffs railed that "members of the Orthodox Jewish community"—not just KBT (the Defendant), but Orthodox Jews writ large, in "other parts of the United States"—have purportedly invoked their religious rights under RLUIPA "to bully public officials and ordinary citizens." Compl. ¶¶ 7, 25. Plaintiffs also claimed that Orthodox Jews "do not recognize" other denominations of Judaism, and are not law-abiding citizens, as they "believe they are entitled to special treatment at the expense of other citizens, that they have the right to evade secular law." *Id.* ¶ 8. Based on KBT's invocation of RLUIPA in the zoning proceeding, and its lawsuit against the Town (since settled), Plaintiffs raised sixteen "claims for relief" against KBT. Plaintiffs sought a declaration that RLUIPA's provision prohibiting "substantial burden[s]" on religious exercise in the land use context is unconstitutional. *Id.* ¶¶ 27, 44-91.

KBT filed a pre-motion to dismiss letter, explaining that the Initial Complaint was meritless for three reasons: Plaintiffs lacked Article III standing, there was no subject-matter jurisdiction, and Plaintiffs failed to state a claim. *See* Pre-Motion Letter (Feb. 16, 2023), ECF No. 17.

**C. Plaintiffs File An Amended Complaint, Now Claiming Public And Private Nuisance**

After the pre-motion conference, Plaintiffs dropped all of the RLUIPA claims against KBT—*i.e.*, they scrapped the legal basis for the entirety of their Initial Complaint. They now challenge RLUIPA only in claims against the United States, and have sued KBT for alleged "nuisances" instead, based on new allegations. Those new allegations are contained in paragraphs 79-88 of the Amended Complaint. And even when KBT informed Plaintiffs that they have these new purported facts all wrong (*see infra* § D), Plaintiffs proceeded undeterred.

According to Plaintiffs, KBT's purported operation of a house of worship at 56 Riverglen Drive and its future operations at 62 Riverglen Drive "caused, causes now, and will cause in the future serious health and safety problems for Plaintiffs and other members of the relevant community." *Id.* ¶ 81. In particular, they say that:

> Riverglen Drive is a relatively narrow street. Defendants frequently park on both sides of the street overnight. This selfish, unlawful behavior causes a dangerous problem for school buses, emergency vehicles, garbage trucks and other normal vehicular traffic. It also causes another dangerous situation, to wit: Defendants walk in the middle of the street in dark clothing with no reflectors in dimly lit Riverglen Drive and the surrounding streets because members of Defendant Congregation cannot operate vehicles at various times.

*Id.* ¶ 82. Plaintiffs offer no further details and no specific examples of these hypothetical dangers ever coming to fruition. While the Complaint asserts that "Defendants" park in this offensive manner and "Defendants" are the ones who "walk in the middle of the street in dark clothing," *see id.*, the only Defendants in this case are KBT and the United States, neither of which are capable of parking or "walk[ing] in the middle of the street in dark clothing."

The Complaint is factually deficient even about the named Plaintiffs. It does not include a single allegation regarding Ms. McKenzie, other than to identify her as a party and to provide her address. *Id.* ¶ 1. With respect to Mr. and Mrs. Coritsidis, Plaintiffs allege that the two will suffer a "special injury" because they live next door to the site that has been approved for KBT's new house of worship. *Id.* ¶ 85. They claim that, with this new site approved, "[t]he parking problem will be exacerbated," and "[e]ven now, given the house of worship at 56 Riverglen Drive, on occasion, Defendants have blocked John Coritsidis' access to his driveway." *Id.* ¶ 86. Plaintiffs also say that "noise will be a special injury." *Id.* ¶ 87.

### D.  KBT Informs Plaintiffs It Does Not Operate A House Of Worship At 56 Riverglen

Although Plaintiffs suggest that the source of the nuisance is a house of worship that KBT purportedly operates at 56 Riverglen Drive, KBT does not operate there. Indeed, Plaintiffs listed a

different address for KBT on their civil cover sheet, *see* ECF No. 2, and a simple GPS search would have revealed that KBT's house of worship is located elsewhere. *See Khal Bnei Torah of Mount Ivy*, Waze, https://www.waze.com/live-map/directions/khal-bnei-torah-of-mount-ivy-w-ramapo-rd-130?to=place.w.187433372.1874202647.7372024, (last visited May 30, 2023). Counsel for KBT brought this to the attention of Plaintiffs' counsel, Mr. Elliot Pell, via email on April 14, 2023. *See* Ex. A. Mr. Pell did not respond.

***

KBT now moves to dismiss the Amended Complaint under Federal Rule 12(b)(1) for lack of jurisdiction—based on Plaintiffs' lack of Article III standing and failure to allege a basis for subject-matter jurisdiction. KBT also moves to dismiss under Federal Rule 12(b)(6) because Plaintiffs fail to allege any plausible claim of private or public nuisance.

## LEGAL STANDARDS

In reviewing a Rule 12(b)(1) motion to dismiss, a court "must take all facts alleged in the complaint as true and draw all reasonable inferences in favor of plaintiff, but jurisdiction must be shown affirmatively, and that showing is not made by drawing from the pleadings inferences favorable to the party asserting it." *Morrison v. Nat'l Austl. Bank Ltd*., 547 F.3d 167, 170 (2d Cir. 2008) (citation omitted), *aff'd*, 561 U.S. 247 (2010). "The plaintiff bears the burden of proving subject matter jurisdiction by a preponderance of the evidence." *Aurecchione v. Schoolman Transp. Sys., Inc*., 426 F.3d 635, 638 (2d Cir. 2005).

To survive a motion to dismiss under Rule 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Vengalattore v. Cornell Univ.*, 36 F.4th 87, 102 (2d Cir. 2022). A claim is plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* The Court need not credit "conclusory allegations or legal

conclusions couched as factual allegations." *Hamilton v. Westchester Cnty.*, 3 F.4th 86, 90-91 (2d Cir. 2021). Nor is it "constrained to accept as truth conflicting pleadings that make no sense, or that would render a claim incoherent, or that are contradicted either by statements in the complaint itself or by documents upon which its pleadings rely, or by facts of which the court may take judicial notice." *Cooper v. Templeton*, 2022 WL 4367445, at *2 (S.D.N.Y. Sept. 21, 2022). Last, the Court "may dismiss a claim as 'factually frivolous' if the sufficiently well-pleaded facts are 'clearly baseless'—that is, if they are 'fanciful,' 'fantastic,' or 'delusional.'" *Gallop v. Cheney*, 642 F.3d 364, 368 (2d Cir. 2011) (quoting *Denton v. Hernandez*, 504 U.S. 25, 32-33 (1992)).

## ARGUMENT

### I.   PLAINTIFFS LACK ARTICLE III STANDING

Plaintiffs have the burden to plead Article III standing. *See, e.g.*, *Amidax Trading Grp. v. S.W.I.F.T. SCRL*, 671 F.3d 140, 145 (2d Cir. 2011). Article III standing requires plausible allegations that Plaintiffs have (1) suffered an injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that is likely to be redressed by a favorable judicial decision. *See Spokeo, Inc. v. Robins*, 578 U.S. 330, 338 (2016). Plaintiffs fail at each step.

#### A.   Plaintiffs Allege Generalized Grievances, Not Personal And Concrete Injuries

To demonstrate injury-in-fact, a plaintiff must show the invasion of a (1) legally protected interest that is (2) concrete and (3) particularized, and (4) actual or imminent, not conjectural or hypothetical. *Maddox v. Bank of N.Y. Mellon Tr. Co., N.A.*, 19 F.4th 58, 62 (2d Cir. 2021). Here, Plaintiffs include only a few allegations that could possibly be described as "injury"—but none of which suffice under Article III.

For one, the allegations are largely not "particularized" because they describe alleged injury to the public at large—as the Complaint states explicitly. For example, Plaintiffs allege that KBT's overnight parking "causes a dangerous problem *for school buses, emergency vehicles,*

*garbage trucks and other normal vehicular traffic,*" Am. Compl. ¶ 82 (emphasis added)—but they

describe no unique harm to Plaintiffs. Plaintiffs likewise cite "serious health and safety problems

for Plaintiffs *and other members of the relevant community*," *Id.* ¶ 81 (emphasis added)—but they

fail to explain how they suffered any injury at all, much less an injury distinct from that of the

community. Plaintiffs never allege that *they* became sick from the supposed "health" issues, or

were imperiled or harmed by the "safety" problems. *See Lee v. Doe*, 2022 WL 204355, at *4

(S.D.N.Y. Jan. 24, 2022) (Seibel, J.) (inmate lacked standing to sue prison based on concern about

COVID-19 when he did not allege cellmates had COVID-19 or even that he had contracted it

himself). In sum, the Amended Complaint contains generalized grievances that are not cognizable

in federal court. *See, e.g.*, *Hollingsworth v. Perry*, 570 U.S. 693, 706 (2013) ("[A] generalized

grievance, no matter how sincere, is insufficient to confer standing.") (quotation marks omitted).

Further, even if these injuries were particularized, there are still not nearly sufficient

allegations to demonstrate a plausible, concrete Article III injury. *See Maddox*. 19 F.4th at 64-66.

Plaintiffs have not pointed to any specific, realistic, or imminent danger to the community. For

example, while Plaintiffs suggest that there already has been public health and safety issues, they

do not allege any specific examples—just the nebulous possibility that traffic could be impeded.

These are hypothetical concerns, not allegations of a "certainly impending" harm to Plaintiffs (or

the community). *See Clapper v. Amnesty Int'l USA*, 568 U.S. 398, 409 (2013) ("[W]e have

repeatedly reiterated that 'threatened injury must be *certainly impending* to constitute injury in

fact," and that '[a]llegations of possible future injury' are not sufficient."); *see also Lee*, 2022 WL

204355, at *4.

Plaintiffs also cannot concoct an injury by referring to some unspecified instances of

having their driveway blocked. Am. Compl. ¶ 86. Perhaps driveway blockage could become

injurious in some cases; but, here, Plaintiffs do not allege whether and how these "occasion[al]" events injured them—be it, physically, emotionally, or financially. *See TransUnion LLC v. Ramirez*, 141 S. Ct. 2190, 2204 (2021) (to be concrete, an injury must bear a "'close relationship' to a harm 'traditionally' recognized as providing a basis for a lawsuit in American courts."). Without any further details, Plaintiffs have not "plead[ed] enough facts to make it plausible that they did indeed suffer the sort of injury that would entitle them to relief." *Maddox*. 19 F.4th 58, 65-66.

Last, Plaintiffs' assumption that these various problems will be "exacerbated" due to the new house of worship and that "noise will be a problem" in the future are insufficient to establish standing. For one, as explained above, the underlying "problems" are themselves not sufficiently alleged to be concrete and particularized injuries. It is thus insufficient to state, as a naked conclusion, that such problems will be "exacerbated," without explaining to what degree and why the problems will worsen. These allegations are speculative and hypothetical, and not sufficiently alleged to be "*certainly* impending." *Clapper*, 568 U.S. at 409.

## B. Plaintiffs Do Not Identify Any Conduct By KBT That Could Have Caused Injuries

Even assuming Plaintiffs suffered Article III injuries, they do not include a single allegation that *KBT* caused those injuries—either the "serious health and safety issues" to the community or the blockage of the Coritsidis' driveway. As the Supreme Court has explained, "there must be a causal connection between the injury and the conduct complained of—the injury has to be fairly traceable to the challenged action of the defendant, and not the result of the independent action of some third party not before the court." *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560 (1992) (cleaned up).

At the outset, while Plaintiffs suggest that "Defendants" park and walk at night dangerously, Am. Compl. ¶ 82, that is impossible because KBT is an entity; it is not capable of

parking or walking (and neither, of course, is the United States). The claim thus cannot be accepted as true for purposes of this motion. *See Gallop*, 642 F.3d at 368 (courts may ignore allegations that are "clearly baseless"). Even if Plaintiffs meant to refer to KBT's individual members, Plaintiffs did not identify individuals who are, in fact, KBT members; and thus they have not alleged a sufficient connection to make a plausible allegation of traceability. Moreover, as noted above, Plaintiffs are aware that KBT does *not* operate a house of worship at 56 Riverglen Drive (or yet at 62 Riverglen Drive); nonetheless, they proceeded to include this representation in a signed pleading.

And even assuming Plaintiffs had alleged that individuals were walking and parking improperly, and had plausibly alleged that those individuals were KBT members, Plaintiffs still do not allege that *KBT* caused them any injury. As the Supreme Court has explained, "where a causal relation between injury and challenged action depends upon the decision of an independent third party . . . standing is not precluded, but it is ordinarily substantially more difficult to establish." *California v. Texas*, 141 S. Ct. 2104, 2117 (2021) (quotation marks omitted); *see also Clapper*, 568 U.S. at 414 n.5 ("[P]laintiffs bear the burden of ... showing that the *defendant's actual action has caused* the substantial risk of harm" (emphasis added)); *Informed Consent Action Network v. Becerra*, 595 F. Supp. 3d 70, 81 (S.D.N.Y. 2022) (no standing where injury results "from the independent action of some third party not before the court"). Plaintiffs fail their burden here because they do not even attempt to make that causal connection. Plaintiffs do not allege that KBT has, by some act (much less some unlawful or challenged act) caused third-party actors to injure Plaintiffs.

### C.  This Court Cannot Remedy Any "Injury" By Declaring KBT A Nuisance

Because Plaintiffs have not been injured and KBT did not cause any injuries, there is nothing for this Court to redress.

*First*, Plaintiffs have not pleaded an actual injury that could be remedied through the monetary damages Plaintiffs seek, Am. Compl. ¶¶ 111-12—such as Plaintiffs' vague concerns about public safety, which did not cause any actual damage to Plaintiffs. Without suffering any damages, Plaintiffs have no standing to seek monetary relief.

*Second*, even assuming Plaintiffs had suffered an injury from the potential traffic issues they discuss, they do not seek any injunctive relief that would remedy those alleged problems. *See Coal. of Watershed Towns v. EPA*, 552 F.3d 216, 218 (2d Cir. 2008) ("'Relief that does not remedy the injury suffered cannot bootstrap a plaintiff into federal court.'" (quoting *Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 107 (1998))). To be sure, such an injunction would be pointless, as Plaintiffs have not identified individuals or KBT members who supposedly violated the parking or traffic laws, and KBT does not control all Orthodox Jews in the community and dictate where they walk or park. Nor did Plaintiffs name the Town as a defendant to enjoin the issuance of the zoning ordinance that now permits KBT's activities. Thus, there is no one named in this lawsuit whom the Court could enjoin in a way that might "remedy" the Plaintiffs' concerns about traffic problems in the Town. *See, e.g.*, *Franklin v. Massachusetts*, 505 U.S. 788, 825 (1992) (Scalia, J. concurring in part) ("Redressability requires that the court be able to afford relief *through the exercise of its power*.") (emphasis in original); *M.S. v. Brown*, 902 F.3d 1076, 1083 (9th Cir. 2018) ("[E]ven where a plaintiff requests relief that would redress her claimed injury, there is no redressability if a federal court lacks the power to issue such relief.").

Aside from monetary damages, Plaintiffs seek only a declaratory judgment stating that KBT is a private nuisance to them and a public nuisance to the community. Am. Compl. ¶¶ 111-12. In Plaintiffs' eyes, such a declaration may provide them with some modicum of satisfaction—that is, harming KBT, deterring its members from gathering and worshipping together, and

cloaking their xenophobia with a judicial imprimatur. But it would not remedy any Article III injury-in-fact.

That remedy would also be inappropriate, not only because KBT did not cause any injury, but also because the declaration would circumvent the local political processes and the other judicial proceedings in this Court. The Town planning board and zoning board already approved KBT's ability to worship at 62 Riverglen Drive, and KBT and the Town settled in this Court with respect to that site. Plaintiffs did not intervene in that case, though they had the opportunity to do so. Plaintiffs also did not challenge either the planning board or the zoning board approval, and the time to do so expired long ago. A remedy declaring KBT a nuisance to the community would undermine those legitimate processes, and cannot be granted here. *Cf. Lewis v. Casey,* 518 U.S. 343, 349 (1996) (standing is "a constitutional principle that prevents courts of law from undertaking tasks assigned to the political branches").

## II. PLAINTIFFS FAIL TO PLEAD A JURISDICTIONAL BASIS FOR THEIR PURELY STATE-LAW CLAIMS AGAINST KBT

Even if Plaintiffs had Article III standing, this Court still lacks subject-matter jurisdiction over Plaintiffs' claims against KBT. "It is hornbook law that the party invoking federal jurisdiction bears the burden of proving facts to establish that jurisdiction," and to do so, Plaintiffs "must allege a proper basis for jurisdiction in his pleadings." *Universal Licensing Corp. v. Paola del Lungo S.p.A.*, 293 F.3d 579, 581 (2d Cir. 2002) (cleaned up) (quoting *Linardos v. Fortuna*, 157 F.3d 945, 947 (2d Cir. 1998)). Plaintiffs have failed to do so here.

Plaintiffs claim that "[t]his Court has jurisdiction over this lawsuit pursuant to 28 U.S.C. Section 1331 because this case concerns federal questions concerning the unconstitutionality inapplicability [sic] of 42 U.S.C 2000cc and violations of [RLUIPA] by Defendants." Am. Compl. ¶ 6. That is wrong. This case does not allege unconstitutional actions or violations of RLUIPA *by*

*KBT*. Plaintiffs now asserts those claims *only* against the United States. *Id.* ¶¶ 89-100. With respect to KBT, Plaintiffs raise only state-law nuisance claims. *Id.* ¶¶ 79-88, 101-104. But the state-law dispute does not "aris[e] under the Constitution, laws, or treaties of the United States." 28 U.S.C. § 1331. Plaintiffs thus fail to "allege a proper basis for jurisdiction" for its claims against KBT, providing another reason for the Court to dismiss. *Universal Licensing*, 293 F.3d at 581.[1]

Notably, Plaintiffs do not invoke this Court's supplemental jurisdiction. *See generally* Am. Compl.; *see also* 28 U.S.C. § 1367 ("[T]he district courts shall have supplemental jurisdiction over all other claims that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution"). Nor could they. For the Court to have supplemental jurisdiction over Plaintiffs' state-law claims, Plaintiffs would need to allege that (1) other "claims … within [this court's] original jurisdiction" (2) "form part of the same case or controversy" as their state-law claims against KBT. *See* 28 U.S.C. § 1367; *see also Cohen v. Postal Holdings, LLC*, 873 F.3d 394, 399 (2d Cir. 2017); *Achtman v. Kirby, McInerney & Squire, LLP*, 464 F.3d 328, 335-36 (2d Cir. 2006). Had Plaintiffs invoked § 1367, they would still fail on both of these requirements.

***First***, the Court does not have original jurisdiction over the other claims in this case—those against the United States. Those so-called "claims" are not even claims at all because RLUIPA does not provide upset citizens with a cause of action to complain about relief that *others* have secured from violations of RLUIPA. RLUIPA provides a cause of action to obtain relief only from harm caused by "violation[s] of" RLUIPA, not its operation. *See* 42 U.S.C. § 2000cc-2(a). And Plaintiffs do not and cannot allege that the United States did anything to them, or somehow

---

[1] Plaintiffs also do not and cannot invoke this Court's diversity jurisdiction. *See* 28 U.S.C. § 1332. Plaintiffs and KBT are all citizens of New York. *See* Am. Compl. ¶¶ 1-4.

infringed upon their religious freedoms. Put another way, RLUIPA does not include a roving "cause of action" for citizens, like Plaintiffs, to nullify as unconstitutional a statute that was duly enacted by the Legislative branch, signed by the Executive branch, and approved repeatedly by the Judicial branch on the flimsy basis that they dislike the statute and the rights it secures for other citizens. And what RLUIPA does not give, the Declaratory Judgment Act cannot provide. That Act "is procedural only and does not create an independent cause of action." *Chevron Corp. v. Naranjo*, 667 F.3d 232, 244 (2d Cir. 2012) (citations omitted).

Even if Plaintiffs' "claims" against the United States could possibly pass as federal causes of action, they would still lie outside of this Court's original jurisdiction. "It is axiomatic that the United States may not be sued without its consent and that the existence of consent is a prerequisite for jurisdiction." *United States v. Mitchell*, 463 U.S. 206, 212 (1983). Any waiver of sovereign immunity must be "'unequivocally expressed' in the statutory text." *Dep't of Army v. Blue Fox, Inc.*, 525 U.S. 255, 261 (1999). Here, there is no indication, equivocal or otherwise, that the United States has consented to this lawsuit.

Without any *bona fide* federal cause of action or claim against the United States, there is no federal question in this case—and thus no original jurisdiction and no supplemental jurisdiction. This Court is thus "*precluded* from exercising supplemental jurisdiction over the remaining state-law claims" against KBT. *Cangemi v. United States*, 13 F.4th 115, 134 (2d Cir. 2021); *Cohen*, 873 F.3d at 399 (supplemental jurisdiction requires an antecedent "proper basis for original federal jurisdiction").

**Second**, Plaintiffs' state-law claims against KBT cannot fall within the Court's supplemental jurisdiction for the additional reason that they do not "form part of the same case or controversy" as Plaintiffs' claims against the United States. 28 U.S.C. § 1367. "[D]isputes are part

of the 'same case or controversy' within § 1367 when they 'derive from a common nucleus of operative fact.'" *Achtman*, 464 F.3d at 335 (quoting *Promisel v. First Am. Artificial Flowers Inc.*, 943 F.2d 251, 254 (2d Cir. 1991)). But the two disputes here—notably, against separate parties— are completely unrelated. For one, there is no real "dispute" with the United States because, again, the Government has taken no action (and certainly no RLUIPA-prohibited action) against Plaintiffs.

Moreover, whatever the contours of that "dispute," it can have nothing to do with the Plaintiffs' new claims that a house of worship at 56 Riverglen Drive (which is not owned or controlled by KBT) causes private and public nuisances, that a house of worship at 62 Riverglen Drive (which does not yet exist) might one day cause private and public nuisances, or that unnamed individual non-defendants park in an offensive way and wear dark clothes. Am. Compl. ¶¶ 82-86; *see also Lyndonville Sav. Bank & Tr. Co. v. Lussier*, 211 F.3d 697, 704 (2d Cir. 2000) (no supplemental jurisdiction where claims "rest[ ] on essentially unrelated facts"); *see also Semi-Tech Litig. LLC v. Bankers Tr. Co.*, 234 F. Supp. 2d 297, 299-301 (S.D.N.Y. 2002) (dismissing, at the pleading stage, state-law claims that did not "derive from a nucleus of operative fact common to the jurisdiction-conferring" federal claim against another defendant) (cleaned up).

Finally, even if there were a plausible basis for supplemental jurisdiction, the Court may decline to exercise it for certain enumerated reasons, including when, "in exceptional circumstances, there are other compelling reasons for declining jurisdiction." 28 U.S.C. § 1367(c)(4). Here, there are exceptional circumstances and compelling reasons to decline jurisdiction.

***First***, Plaintiffs' new state-law claims are part of a broader tactic to pressure KBT by forcing it to continue litigating in federal court. Plaintiffs' first gambit was to direct their RLUIPA

claims against KBT; when the Court cast doubt on this strategy at the pre-motion conference, Plaintiffs pivoted, and now vent their RLUIPA frustrations at the United States. Because that left nothing for KBT, Plaintiffs concocted brand new state-law claims, and tacked them onto the Amended Complaint, despite their known factual implausibility. Courts have declined to exercise supplemental jurisdiction when the supplementary claims were part of an improper litigation strategy. *See, e.g.*, *Machowski v. Auburndale Props., Inc*., 574 F. Supp. 3d 776, 779-82 (C.D. Cal. 2021); *Molski v. EOS Est. Winery*, 2005 WL 3952249, at *4-5 (C.D. Cal. July 14, 2005).

**Second**, this is a unique case in which Plaintiffs bring all of the state-law claims against one party, KBT, and all of the (purportedly) federal claims against another, unrelated party, the United States. Accordingly, judicial economy is not possibly served by this Court exercising supplemental jurisdiction. *See Lindsay v. Gov't Emps. Ins. Co.*, 448 F.3d 416, 425 (D.C. Cir. 2006) (providing that the application of § 1367(c)(4) depends on considerations of "economy, convenience, fairness, and comity" (quoting *Carnegie–Mellon Univ. v. Cohill*, 484 U.S. 343, 350 (1988)); *Zelaya v. J.M. Macias, Inc.*, 999 F. Supp. 778, 783 (E.D.N.C. 1998) (holding that "exceptional circumstances" and "compelling reasons" counseled declining exercising supplemental jurisdiction over state-law claims asserted by a "different and distinct set[] of plaintiffs" than those who asserted the federal claims). Any litigation regarding parking and dark clothing will be completely divorced from Plaintiffs' abstract legal arguments against the Government that RLUIPA is unconstitutional.

## III.    KBT IS NOT A PRIVATE OR PUBLIC NUISANCE

### A.  Plaintiffs Cannot Claim Private Nuisance Based On "Occasion[al]" Inconvenience

A private nuisance, under New York law, "threatens one person or a relatively few, an essential feature being an interference with the use or enjoyment of land." *Copart Indus., Inc. v. Consol. Edison Co. of N.Y., Inc.*, 41 N.Y.2d 564, 568 (1977) (citation omitted). To state a private

nuisance claim, a plaintiff must allege "(1) an interference substantial in nature, (2) intentional in origin, [and] (3) unreasonable in character, (4) with [the plaintiff's] property right to use and enjoy land, (5) caused by [the defendant's] conduct in acting or failing to act." *Cangemi v. United States*, 13 F.4th 115, 136 (2d Cir. 2021); *see also* Restatement (Second) of Torts § 822 (1979). Putting aside that Plaintiffs are on notice that KBT does *not* operate a house of worship at 56 Riverglen Drive, *see supra* pp.5-6—rendering the entire claim implausible anyway—Plaintiffs still fail to satisfy the elements here.

To begin, Plaintiffs do not complain about conduct that allegedly interferes with the rights of "relatively few." The "health and safety" issues, the night walking, and the parking on both sides of the street, all—according to Plaintiffs' own pleading—affect the community at large. *See* Am. Compl. ¶¶ 81-87 (alleging nuisance to "members of the relevant community" and to "school buses, emergency vehicles, garbage trucks and other normal vehicular traffic"). When a defendant's conduct allegedly "endanger[s] the health of … residents, a considerable number of people rather than one person or relatively few people," there is "not [a claim] for private nuisance." *Town of New Windsor v. Avery Dennison Corp.*, 2012 WL 677971, at *16 (S.D.N.Y. Mar. 1, 2012) (Seibel, J.); *compare 532 Madison Ave. Gourmet Foods, Inc. v. Finlandia Ctr., Inc.*, 96 N.Y.2d 280, 292 (2001) (public nuisance involves "substantial interference with the exercise of a common right of the public").

Nor have Plaintiffs alleged an interference that is "substantial" or "unreasonable." Under New York law, "not every annoyance constitutes a nuisance." *Domen Holding Co. v. Aranovich*, 1 N.Y.3d 117, 124 (2003). A nuisance requires "a *continuous* invasion of rights," or "a *pattern* of continuity or recurrence of objectionable conduct." *Id.* (emphases added); *see also Quattlander v. Ray*, 2021 WL 5043004, at *6 (S.D.N.Y. Oct. 29, 2021) (Seibel, J.) (same). By Plaintiffs' own

admission, the driveway blockage happened only "on occasion." Am. Compl. ¶ 86. That, by itself, precludes any claim under New York law. In *Anderson v. Elliott*, for example, plaintiffs complained about a "disturbance that was caused by the defendants' television filming on several occasions," including "the presence of an excessive number of cars, a dumpster, mattresses, and flood lights." 807 N.Y.S.2d 101, 102 (2d Dep't 2005). The court held that these disturbances—far greater, more frequent, and more invasive than the one alleged here—did not "rise to the level of substantial interference with the plaintiffs' use and enjoyment of their properties as to constitute a private nuisance." *Id.* As a matter of New York law, temporary driveway blockage does not suffice.

Last, as explained above, Plaintiffs never allege that KBT caused any third-party actors to block the driveway, *supra* § I.B, much less that KBT *intended* to cause the conduct. The failure to allege a single fact supporting these two elements of the claim (*i.e.*, causation and intent) also requires dismissal. *See SUEZ Water New York, Inc. v. E.I. Du Pont de Nemours & Co.*, 578 F. Supp. 3d 511, 545 (S.D.N.Y. Jan. 4, 2022) ("[A] defendant is liable for public or private nuisance only it if 'create[d] [the] nuisance or participate[d] in the creation or maintenance thereof.'").

## B.  Plaintiffs Cannot Claim Public Nuisance Based On Intermittent Parking Issues

Plaintiffs also assert a public nuisance claim, which is "an offense against the State and is subject to abatement or prosecution on application of the proper governmental agency.'" *In re Methyl Tertiary Butyl Ether (MTBE) Prod. Liab. Litig.*, 725 F.3d 65, 121 (2d Cir. 2013) (quoting *Copart Indus.*, 41 N.Y.2d at 568). To prevail on a public nuisance claim under New York law, a plaintiff must allege the defendant's conduct "amounts to a substantial interference with the exercise of a common right of the public," thereby "endangering or injuring the property, health, safety or comfort of a considerable number of persons." *532 Madison*, 96 N.Y.2d at 292.

A "public nuisance is actionable by a private person only if it is shown that the person suffered special injury beyond that suffered by the community at large." *Id*. The injury must be

"different in 'kind,' not simply 'degree.'" *SUEZ Water New York*, 578 F. Supp. 3d at 544; *see also Palmer v. Amazon.com*, 51 F.4th 491, 512 (2d Cir. 2022) ("It therefore is not enough that a private person has suffered the same kind of harm or interference but to a greater extent or degree.") (quotation marks omitted). "This principle recognizes the necessity of guarding against the multiplicity of lawsuits that would follow if everyone were permitted to seek redress for a wrong common to the public." *532 Madison*, 96 N.Y.2d at 292.

At the outset, Plaintiffs allegation that they suffered a "special injury" is conclusory, as they have not identified any actual injuries to themselves. *Supra* § I.A. They point to the potential traffic problems being "exacerbated" and future "noise," but they do not include a single allegation as to why their injury will be unique when compared to that of others in the neighborhood. *See Icahn Sch. of Med. at Mount Sinai v. Health Care Serv. Corp.*, 234 F. Supp. 3d 580, 582 (S.D.N.Y. 2017) ("The Court … need not accept allegations that are vague or conclusory."). Still, even if the hypothetical noise will be, in fact, slightly louder for them, or the traffic slightly more intrusive, that still would not suffice, as a matter of law, because those are differences in degree and not in kind. *SUEZ Water N.Y.*, 578 F. Supp. 3d at 544; *Palmer*, 51 F.4th at 512.

Putting those threshold problems aside, Plaintiffs still do not allege any facts to satisfy the basic elements of the claim. For example, they do not allege that KBT's "actions have substantially interfered with the exercise of a common right of the public." *Hanna v. Motiva Enters., LLC*, 839 F. Supp. 2d 654, 672 (S.D.N.Y. 2012); *see also Reid v. Kawasaki Motors Corp., U.S.A.*, 189 A.D.2d 954, 957 (3d Dep't 1993) ("The *sine qua non* of an action for public nuisance … is the interference by a defendant with a public right. The complaint here simply is bereft of any such allegations.") (citation omitted). A liberal construction of the Amended Complaint might permit an inference that the parking problem interferes with the public's unobstructed use of the street.

But New York courts have long held that "[t]he public right to the unobstructed use of a street in all its parts is not absolute but relative," which "may be qualified also by the use, *temporary and for a reasonable time*, of the sidewalk and side of the street, by an abutting owner, to fulfill a reasonable necessity." *Lyman v. Village of Potsdam*, 228 N.Y. 398, 404 (N.Y. 1920) (emphasis added). Here, Plaintiffs allege that the offensive parking occurs "overnight," as does the supposedly intrusive walking. *See* Am. Compl. ¶ 82. Such a temporary obstruction—especially overnight—does not rise to the level of substantial interference with a public right to unobstructed roads. *See Lowth v. Town of Cheektowaga*, 82 F.3d 563, 569 (2d Cir. 1996) ("A temporary obstruction on a public highway does not constitute a public nuisance."). Even so, Plaintiffs do not allege that any cars were parked improperly—*e.g.*, too far from the curb—in a way that would obstruct traffic.

Moreover, Plaintiffs do not allege that KBT's conduct injured a "considerable number of persons" or the "community at large." *Hanna*, 839 F. Supp. 2d at 673. The decision in *Hanna* illustrates Plaintiffs' pleading deficiency. There, the plaintiffs demonstrated that the defendant's conduct "affected … the surrounding area, including a strip mall, plaintiffs' property, and their neighbors' property"; yet that evidence, the court concluded, still did not establish that a "considerable number of people … were harmed." *Id.* at 672-73.

Plaintiffs' allegations here are much thinner. Plaintiffs simply allege that "members of the relevant community" have been injured by KBT's conduct because the supposedly offensive parking "causes a dangerous problem for school buses, emergency vehicles, garbage trucks and other normal vehicular traffic." Am. Compl. ¶¶ 81-82. But Plaintiffs do not allege, in specific terms, what the "dangerous problem" is, whether that problem has actually harmed anyone, or any other facts to support an injury that is sufficiently widespread. *See Caldarola v. Town of*

20

*Smithtown*, 2010 WL 6442698, at *16 (E.D.N.Y. July 14, 2010) ("[T]he Court cannot infer that a considerable number of people in New York are being harmed or that there has been an impact on some right or privilege common to every person in the community." (quotation marks omitted)), *adopted by* 2011 WL 1336574 (E.D.N.Y. Apr. 04, 2011). Plaintiffs have thus failed to plead the basic elements of a public nuisance claim.

Finally, as explained above, Plaintiffs have not even alleged that KBT is the cause of the nuisance—because "Defendants," a Congregation and a country, cannot park or walk on the street—and Plaintiffs have not alleged any facts showing that KBT caused that activity by independent third parties. *See* § I.B; *see also People ex rel. Spitzer v. Sturm, Ruger & Co.*, 761 N.Y.S.2d 192, 195 (1st Dep't 2003) (public nuisance claims requires "causal nexus"); *NAACP v. AcuSport, Inc.*, 271 F. Supp. 2d 435, 492 (E.D.N.Y. 2003) ("Satisfaction of the causation requirement for liability in a public nuisance action requires specific proof that a defendant, alone or with others, created, contributed to, or maintained the alleged interference with the public right.").

## IV.  KBT IS ENTITLED TO FEES UNDER N.Y. ANTI-SLAPP LAW BECAUSE PLAINTIFFS INTENDED TO PREVENT KBT FROM EXERCISING ITS RIGHTS

New York's anti-SLAPP statute mandates an award of costs and attorney's fees where "the action involving public petition and participation was commenced . . . without a substantial basis in fact and law and could not be supported by a substantial argument for the extension, modification or reversal of existing law." N.Y. Civ. Rights Law § 70-a(1); *see also Goldman v. Reddington*, 2021 WL 4099462, at *5 (E.D.N.Y. Sept. 9, 2021) (mandatory attorney's fee provision of New York anti-SLAPP statute applies in federal court). This case is the quintessential strategic lawsuit against public participation ("SLAPP suit").

***First***, the entire lawsuit is not only meritless, but obviously so. Plaintiffs' Initial Complaint

did not even include a recognized claim for relief, tort, or statutory cause of action. In their haste to respond to a Town zoning decision involving RLUIPA that Plaintiffs did not like, Plaintiffs raced into federal court to sue a private actor, KBT, on the half-baked theory that RLUIPA was unconstitutional. In addition to having no grounds to sue KBT on this theory, *see generally* Pre-Motion Letter (Feb. 16, 2023), ECF No. 17, Plaintiffs ignored numerous cases, including cases in the Second Circuit, upholding RLUIPA's constitutionality. *See e.g.*, *Westchester Day Sch. v. Village of Mamaroneck*, 504 F.3d 338, 354-56 (2d Cir. 2007); *Guru Nanak Sikh Soc'y v. County of Sutter*, 456 F.3d 978, 992-95 (9th Cir. 2006); *World Outreach Conf. Ctr. v. City of Chicago*, 591 F.3d 531, 533-34 (7th Cir. 2009). And, for all the reasons in KBT's Pre-Motion Response Letter, their argument that *Kennedy v. Bremerton Sch. Dist.*, 142 S. Ct. 2407 (2022), undermined RLUIPA was baseless. Pre-Motion Response Letter (Mar. 9, 2023), ECF No. 25.

The Amended Complaint fares no better for all the reasons discussed herein. Plaintiffs are now suing only the United States to declare RLUIPA unconstitutional—again, without any possible cause of action against the Government or waiver of sovereign immunity—and they have invented new, offensive, and unrelated state-law nuisance claims to keep KBT in the case without undertaking a shred of diligence to investigate the veracity of such claims. To the contrary, they simply ignored KBT's email, and publicly available information, explaining that it does not and did not operate a house of worship at 56 Riverglen.

Further, not only are all of Plaintiffs' allegations implausible, Plaintiffs did not even attempt to satisfy several elements of their claims, and they ignored binding precedent that refutes their claims as a matter of law. *Supra* § III. They also have not offered a plausible basis to invoke

this Court's jurisdiction over purely state-law claims, simply assuming that the claims against KBT can remain in federal court because they are simultaneously suing the United States. *Supra* § II.

**Second**, Plaintiffs' own allegations reveal that their purpose has always been to harass and retaliate against KBT for exercising its "constitutional right [to] petition" the Town government and to lawfully invoke its federal rights under RLUIPA. *See* N.Y. Civ. Rights Law § 76-a(1)(a)(2); *see also id.* § 76-a(1)(a)(1) (SLAPP lawsuits are intended to hinder a person's "communication[s] in a place open to the public or a public forum in connection with an issue of public interest"). In their Amended Complaint, Plaintiffs explicitly state that they brought this case because "religious organizations, including sects of the Orthodox Jewish community, have used [RLUIPA] as a sword, not a shield, to bully public officials and ordinary citizens to cave to those religious organizations' unreasonable and unfair demands for favoritism in land use decisions." Am. Compl. ¶ 8; *see also id.* ¶ 15 (complaining that, "at numerous … public hearings of the Planning Board," KBT "made quite clear that it was relying upon RLUIPA in support of its application" to build a synagogue). *id.* ¶¶ 12-30 (revealing that the impetus for this suit was KBT's successful attempt to convince the Town to respect its religious rights under RLUIPA when considering its land use application). Thus, by their own admission, Plaintiffs are trying to thwart KBT from exercising their established federal rights. That they do not like a federal law is not a sufficient basis to prevent others from rightfully invoking it and seeking the protections it provides. That is precisely what the anti-SLAPP statute is intended to prevent.

**Third**, both complaints are infused with a disturbing degree of animus that should find no refuge in society, let alone in a federal courthouse. Plaintiffs' numerous and unwarranted anti-Semitic attacks reveal the true purpose of their campaign against KBT in particular and Orthodox Jews in general. For example, Plaintiffs unnecessarily referred to Orthodox Jews as selfish,

"entitled," and not law-abiding. Am. Compl. ¶ 8; Compl. ¶ 8. And for no apparent reason, Plaintiffs criticized Orthodox Jews (falsely) for not "recogniz[ing]" other denominations. Compl. ¶ 8.

Indeed many of their allegations verge perilously close to age-old anti-Semitic conspiracies and tropes. In one instance, Plaintiffs allege that the presence of synagogues will cause "serious health" problems in the community. Am. Compl. ¶¶ 81, 84. Of course, they refrain from elaborating on these purported "health problems," but the dog whistling is clear. Similarly, Plaintiffs allege that "Defendants" park on both sides of the road and walk at night in dark clothes, *see* Am. Compl. ¶ 82, conflating KBT as an entity with all Orthodox Jews, and dehumanizing all of these individuals. Plaintiffs seem to imply that all Orthodox Jews in the Town are necessarily associated with, and even controlled by, KBT—or at least Plaintiffs did not care enough to identify them as people and distinguish between them and KBT.

In sum, Plaintiffs' poorly concealed retaliatory motive to hinder KBT's public participation and invocation of duly-enacted federal law is made clear through their deficient pleadings and unwarranted attacks against Orthodox Jews. In such situations, New York's anti-SLAPP statute mandates an award of costs and attorney's fees. *See* N.Y. Civ. Rights Law § 70-a(1).

## CONCLUSION

For the foregoing reasons, the Court should dismiss the Amended Complaint. Additionally, the Court should set a briefing schedule to determine the amount of attorneys' fees owed to KBT.

Dated: New York, New York
         May 30, 2023

Respectfully submitted,

*/s/  Yehudah L. Buchweitz*
Yehudah L. Buchweitz
David Yolkut
Shai Berman
WEIL, GOTSHAL & MANGES LLP
767 Fifth Avenue
New York, New York 10153
(212) 310-8000

Mark I. Pinkert
WEIL, GOTSHAL & MANGES LLP
1395 Brickell Avenue, Suite 1200
Miami, FL 33131
(305) 577-3148

*Counsel for Defendant K'hal Bnei Torah
 of Mount Ivy*