UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------x
JOHN CORITSIDIS, TINA CORITSIDIS,
and KAREEN MCKENZIE,

                                 Plaintiffs,        **OPINION & ORDER**

- against -

                                                         No. 22-CV-10502 (CS)

KHAL BNEI TORAH OF MOUNT IVY,
and UNITED STATES OF AMERICA,

                                 Defendants.
-------------------------------------------------------------x

Appearances:

Elliott Louis Pell
Elliott Louis Pell, P.C.
New York, New York
*Counsel for Plaintiffs*

Yehudah L. Buchweitz
David Yolkut
Shai Berman
Daniel M. Lifton
Weil, Gotshal & Manges LLP
New York, New York

Mark I. Pinkert
Weil, Gotshal & Manges LLP
Miami, Florida
*Counsel for Defendant K'hal Bnei Torah of Mount Ivy*

Alyssa B. O'Gallagher
Assistant United States Attorney
New York, New York
*Counsel for Defendant United States of America*

Seibel, J.

Before this Court are Defendants' motions to dismiss Plaintiffs' Amended Complaint under Federal Rules of Civil Procedure ("FRCP") 12(b)(1) and 12(b)(6).  (ECF Nos. 36, 42.)  For the following reasons, the motions are GRANTED.

**I.     BACKGROUND**

For the purposes of the motion, I accept as true the facts, but not the conclusions, set forth in the Amended Complaint.  (ECF No. 27 ("AC").)

**A.     Facts**

Plaintiffs John Coritsidis, Tina Coritsidis, and Kareen McKenzie ("Plaintiffs") are residents of the Town of Haverstraw (the "Town") in Rockland County, New York.  (AC ¶¶ 1-3.)  They live on Riverglen Drive, the same street as a single-family residence located at 62 Riverglen Drive owned by Defendant K'Hal Bnei Torah of Mount Ivy ("KBT"), a religious corporation serving the Town's Orthodox Jewish community.  (*Id.* ¶¶ 1-4, 12.)

**1.     KBT's Prior Action Against the Town**

In 2021, KBT applied for site plan approval to convert and expand the residence at 62 Riverglen Drive into a house of worship.  (*Id.* ¶ 12.)  The Town's Planning Board held several public hearings concerning KBT's application, at which KBT made clear that it was relying on the Religious Land Use and Institutionalized Persons Act of 2000, 42 U.S.C. § 2000cc(a)(1) ("RLUIPA") to support its application.  (*Id.* ¶¶ 13-16.)  The Planning Board's attorney drafted a resolution approving the site plan, which resolution relied on RLUIPA – a topic that Plaintiffs believe the Planning Board discussed during deliberations as well as at length during public hearings.  (*Id.* ¶¶ 20-21.)  On August 20, 2022, the Planning Board rejected the draft resolution.  (*Id.* ¶ 22.)

In response to the denial of its application, KBT sued the Town, the Planning Board, and three Board members, asserting claims for violations of (1) KBT's federal constitutional rights under 42 U.S.C. §§ 1983 and 1985, (2) RLUIPA, and (3) KBT's New York state constitutional rights. (*Id.* ¶¶ 23-26; *see* No. 22-CV-9630, ECF No. 4.)[1]  KBT and the Town settled that case, (*see* No. 22-CV-9630, ECF No. 12), and as part of that settlement the Town approved KBT's application to convert 62 Riverglen Drive to a house of worship and agreed to pay KBT $235,000 in attorneys' fees, (AC ¶ 30; s*ee* No. 22-CV-9630, ECF No. 12).

### 2. The Instant Action

Plaintiffs brought this case seeking to challenge the constitutionality of RLUIPA, alleging that it discriminates in favor of religion in violation of the Establishment Clause. (AC ¶¶ 8-9, 46-78, 90, 92, 94, 96, 98, 100.)  Additionally, the Amended Complaint alleges that KBT's actions constitute a private and public nuisance. (*Id.* ¶¶ 79-88, 102, 104.)  While the expanded house of worship at 62 Riverglen Drive is apparently not yet built, (*see id.* ¶¶ 80, 82, 86-87), Plaintiffs allege that KBT currently operates a house of worship at 56 Riverglen Drive. (*Id.* ¶ 79.)  Plaintiffs contend that "Defendants frequently park on both sides of the street overnight" and "walk in the middle of the street in dark clothing with no reflectors in dimly lit Riverglen Drive and the surrounding streets because members of Defendant Congregation cannot operate

---

[1] The Court takes judicial notice of the docket entries filed in *K'Hal Bnei Torah of Mt. Ivy v. Town of Haverstraw et al.*, No. 22-CV-9630 (S.D.N.Y. 2022).  *See Advanced Analytics, Inc. v. Citigroup Glob. Mkts., Inc.*, No. 04-CV-3531, 2022 WL 2529281, at *3 (S.D.N.Y. July 7, 2022) ("With respect to documents from other litigations, a court may take judicial notice of a document filed in another court not for the truth of the matters asserted in the other litigation, but rather to establish the fact of such litigation and related filings.")  Unless otherwise noted, all case quotations omit internal quotation marks, citations, alterations, and footnotes.  Citations to "No. 22-CV-9630, ECF No." refer to the corresponding docket entries for that case.

3

vehicles at various times." (*Id.* ¶ 82.)[2]  In Plaintiffs' view, "[t]his selfish, unlawful behavior causes a dangerous problem for school buses, emergency vehicles, garbage trucks and other normal vehicular traffic." (*Id.*)  As such, Plaintiffs assert that the operation of the house of worship at 56 Riverglen Drive – purportedly without a permit – as well as the anticipated operation of 62 Riverglen Drive amounts to "an intentional, unreasonable interference substantial in nature with Plaintiffs' use and enjoyment of their land" that "creates a serious health and safety problem." (*Id.* ¶ 84.)  Plaintiffs further allege that Tina and John Coritsidis "will suffer special injury . . . because they live next door to the expanded house of worship at 62 Riverglen Drive." (*Id.* ¶ 85.)  These "special injur[ies]" include a "parking problem" that "will be exacerbated," as worshipers at 56 Riverglen Drive already occasionally block access to John Coritsidis' driveway, (*id.* ¶ 86), as well as "the problem with noise" that they anticipate from 62 Riverglen Drive, (*id.* ¶ 87).  Finally, Plaintiffs allege that the expanded house of worship will cause future injuries for the community at large. (*Id.* ¶¶ 81-84.)

B.  **Procedural History**

On December 13, 2022, Plaintiffs filed their initial complaint against KBT raising sixteen claims for relief and seeking a declaration that RLUIPA's provision prohibiting "substantial burden[s]" on religious exercise in the land use context is unconstitutional and violates multiple provisions of the New York State Constitution. (ECF No. 1 ¶¶ 27-28, 44-75.)

Pursuant to Federal Rule of Civil Procedure 5.1(a), Plaintiffs notified the United States of America (the "United States" or the "Government") that they were challenging the constitutionality of a federal statute. (ECF No. 8.)  On February 15, 2023, the Government

---

[2] As the only Defendants in this case are KBT and the United States, Plaintiffs' use of the term "Defendants" here must refer to congregants of KBT who worship at 56 Riverglen Drive.

4

requested an extension of time to determine whether it would "intervene in the case, file a statement of interest pursuant to 28 U.S.C. § 517, or take no action." (ECF No. 14.) On February 16, 2023, KBT filed a pre-motion letter in anticipation of a motion to dismiss. (ECF No. 17.) On that same date, I set a conference to discuss KBT's request, (ECF No. 18), and granted the Government's request for an extension, while encouraging it to participate in the upcoming conference, (ECF No. 15). At the conference on March 16, 2023, I granted Plaintiffs leave to amend their complaint, and set a briefing schedule. (*See* Minute Entry dated Mar. 16, 2023.)

On March 30, 2023, Plaintiffs filed their Amended Complaint, in which they dropped all RLUIPA claims against KBT and instead asserted (seeking declaratory judgments and damages) that KBT's actions constitute both a private and a public nuisance. (AC ¶¶ 102, 104, 111-12.) Plaintiffs also added the United States as a defendant and asserted six federal claims against it, seeking declarations that both facially and as applied, RLUIPA violates the First, Fifth, and Ninth Amendments of the United States Constitution. (*Id.* ¶¶ 46-78, 90, 92, 94, 96, 98, 100, 105-110.)

On July 20, 2023, KBT moved to dismiss the Amended Complaint under FRCP 12(b)(1) for lack of jurisdiction and 12(b)(6) for failure to state a claim. (ECF No. 36.) It argues that Plaintiffs' claims should be dismissed because Plaintiffs: (1) lack Article III standing; (2) fail to allege a proper basis for subject matter jurisdiction, and (3) fail to allege any plausible claim for private or public nuisance. (ECF No. 37 ("KBT's Mem.") at 1-2, 7-21.) Additionally, KBT claims it is entitled to attorneys' fees under New York's Anti-SLAPP statute (N.Y. Civ. Rights Law § 70-a(1)). (*Id.* at 3, 21-24.)

The United States separately moved to dismiss, (ECF No. 42), contending that it has not waived its sovereign immunity and thus the Court lacks subject matter jurisdiction over Plaintiffs' federal claims, (ECF No. 43 ("US Mem.") at 1-2, 7-9), and that Plaintiffs lack standing, (*id.* at 2, 9-16).  While the Government argues that the Court should not reach the merits, it further asserts in the alternative that Plaintiffs have failed to show that RLUIPA violates the Establishment Clause of the First Amendment, the Fifth Amendment's Due Process Clause, the Ninth Amendment, or any other constitutional provisions.  (*Id.* at 2, 17-25.)

In response, Plaintiffs argue that they have standing to challenge the constitutionality of RLUIPA because they have "suffered and will continue to suffer" injuries that are traceable to Defendants and that can be redressed by a favorable judicial order.  (ECF No. 41 ("Ps' Opp.") at 1-2, 12-21.)  They further contend that an exception to sovereign immunity applies because they are challenging both the constitutionality of RLUIPA and the Government's attempt to compel enforcement of the statute against Plaintiffs and in favor of KBT.  (*Id.* at 2-3, 11-12.)  Plaintiffs also argue that they have sufficiently pleaded claims for relief under the Establishment Clause, the Due Process Clause, and the Ninth Amendment.  (*Id.* at 3-4, 7-11, 21-22.)  Regarding the nuisance claims against KBT, Plaintiffs argue that the Court must exercise supplemental jurisdiction because the state law nuisance claims against KBT are part of the same case or controversy as the RLUIPA claims against the United States.  (*Id.* at 3, 22-24.)  Finally, Plaintiffs assert that the Court should deny KBT's motion for sanctions under the anti-SLAPP law as a "patently frivolous" bullying tactic.  (*Id.* at 4.)

II.    **LEGAL STANDARD**

    A.    **Motion to Dismiss for Lack of Subject Matter Jurisdiction**

Under Federal Rule of Civil Procedure 12(b)(1), a district court must dismiss an action for lack of subject matter jurisdiction "if the court lacks the statutory or constitutional power to adjudicate it." *Cortlandt St. Recovery Corp. v. Hellas Telecomms., S.A.R.L.*, 790 F.3d 411, 416-17 (2d Cir. 2015). A claim that a plaintiff lacks standing to sue is a challenge to a court's subject matter jurisdiction. *See Horton v. Bd. of Educ. of the Sherburne-Earlville Cent. Sch. Dist.*, No. 15-CV-782, 2016 WL 2354266, at *2 (N.D.N.Y. May 4, 2016). Similarly, a claim of sovereign immunity challenges the Court's subject matter jurisdiction. *See Peker v. Steglich*, No. 06-CV-6910, 2007 WL 683796, at *1 (S.D.N.Y. Mar. 5, 2007), *aff'd*, 324 F. App'x 38 (2d Cir. 2009) (summary order). "A plaintiff asserting subject matter jurisdiction has the burden of proving by a preponderance of the evidence that it exists." *Makarova v. United States*, 201 F.3d 110, 113 (2d Cir. 2000); *see Bank v. Wolfe*, No. 19-CV-441, 2020 WL 4748320, at *1 (E.D.N.Y. Aug. 17, 2020). "The court must take all facts alleged in the complaint as true and draw all reasonable inferences in favor of plaintiff, but jurisdiction must be shown affirmatively, and that showing is not made by drawing from the pleadings inferences favorable to the party asserting it." *Morrison v. Nat'l Austl. Bank Ltd.*, 547 F.3d 167, 170 (2d Cir. 2008), *aff'd on other grounds*, 561 U.S. 247 (2010).

The Court may review extrinsic evidence when considering a Rule 12(b)(1) challenge to subject matter jurisdiction. *Papadopoulos v. Comm'r of Social Sec.*, No. 13-CV-3163, 2014 WL 2038314, at *1 (S.D.N.Y. May 15, 2014); *see Arar v. Ashcroft*, 532 F.3d 157, 168 (2d Cir. 2008) ("[T]he district court may examine evidence outside of the pleadings to make th[e] determination" of whether subject matter jurisdiction exists), *rev'd en banc on other grounds*,

585 F.3d 559 (2d Cir. 2009)).  When a defendant moves to dismiss both for lack of subject matter jurisdiction and on other grounds such as failure to state a claim upon which relief can be granted, the Court must address the issue of subject matter jurisdiction first. *See Rhulen Agency, Inc. v. Ala. Ins. Guar. Ass'n*, 896 F.2d 674, 678 (2d Cir. 1990).

Because I find that the court lacks subject matter jurisdiction, I need not detail the familiar standards governing motions to dismiss for failure to state a claim.

### III.    DISCUSSION

#### A.    The Court Lacks Subject Matter Jurisdiction over the Federal Claims

Because the only federal claims are asserted against the United States and Plaintiffs argue that the Court has supplemental jurisdiction over the state law claims against KBT, I first consider whether the Court has subject matter jurisdiction over the federal claims.  The United States argues that there is no subject matter jurisdiction because (1) sovereign immunity bars the suit, and, alternatively, (2) Plaintiffs lack Article III standing.  (*See* US Mem. at 1-2, 7-16.)

##### 1.    Sovereign Immunity

"It is, of course, 'axiomatic' under the principle of sovereign immunity 'that the United States may not be sued without its consent and that the existence of consent is a prerequisite for jurisdiction.'" *Adeleke v. United States*, 355 F.3d 144, 150 (2d Cir. 2004) (quoting *United States v. Mitchell*, 463 U.S. 206, 212 (1983)).  Accordingly, in a suit against the United States, there is no subject matter jurisdiction absent "a waiver of sovereign immunity with respect to the claim asserted." *Up State Fed. Credit Union v. Walker*, 198 F.3d 372, 374 (2d Cir. 1999) (*per curiam*). "The sovereign immunity of the United States may only be waived by federal statute and that waiver must be express, not implied." *Bank*, 2020 WL 4748320, at *2.  "Absent an 'unequivocally expressed' statutory waiver, the United States, its agencies, and its employees

(when functioning in their official capacities) are immune from suit based on the principle of sovereign immunity." *County of Suffolk v. Sebelius*, 605 F.3d 135, 140 (2d Cir. 2010) (quoting *Dep't of the Army v. Blue Fox, Inc.*, 525 U.S. 255, 260-61 (1999)).

To survive a motion to dismiss under Rule 12(b)(1), Plaintiffs "bear[] the burden of establishing that [their] claims fall within an applicable waiver." *Goodwine v. Gov't*, No. 21-CV-4238, 2022 WL 409710, at *2 (E.D.N.Y. Feb. 10, 2022). Any ambiguity regarding the Government's consent to be sued "must be construed strictly in favor of the sovereign." *United States v. Nordic Vill., Inc.*, 503 U.S. 30, 33-34 (1992); *see Sebelius*, 605 F.3d at 140.

The parties agree that the United States has not waived sovereign immunity. (US Mem. at 7-9; Ps' Opp. at 11; ECF No. 44 ("US Reply") at 1-2.) Rather, Plaintiffs contend that an exception to sovereign immunity created by *Larson v. Domestic & Foreign Commerce Corp.*, 337 U.S. 682, 690 (1949), applies here because Plaintiffs challenge the constitutionality of a statute, and the United States "has intervened in this litigation to endorse and uphold the constitutionality of RLUIPA so it can be enforced in favor of [KBT] against Plaintiffs." (Ps' Opp. at 11-12.) In so doing, Plaintiffs misstate the law and distort the facts.

*Larson* created two sovereign immunity exceptions that allow a court to exercise jurisdiction where a plaintiff seeks to challenge the enforcement of a statute by a federal officer. *See Larson*, 337 U.S. at 689-90; *Dotson v. Griesa*, 398 F.3d 156, 177 (2d Cir. 2005). The first arises where the federal officer takes actions that are beyond the limitations imposed by the statute, effectively acting *ultra vires*. *See Larson*, 337 U.S. at 689; *Dotson*, 398 F.3d at 177. The second applies where a "statute or order conferring power upon the officer to take action in the sovereign's name is claimed to be unconstitutional" – for example, in *habeas corpus* actions against a prison warden or where a party seeks an injunction to prevent enforcement of

9

unconstitutional laws. *Larson*, 337 U.S. at 690; *see Dotson*, 398 F.3d at 177 (second exception in *Larson* allows challenge to federal officer's powers "'if the powers, or their exercise in the particular case, are constitutionally void'") (quoting *Larson,* 337 U.S. at 701-02); *United States v. Vazquez,* 145 F.3d 74, 79 (2d Cir. 1998) ("No waiver [of sovereign immunity] is needed in a suit challenging the enforcement of a statute when 'the statute or order conferring power upon the officer to take action in the sovereign's name is claimed to be unconstitutional.'") (quoting *Larson*, 337 U.S. at 690).

Here, Plaintiffs claim to be covered by the second exception, (Ps' Opp. at 11), but it does not apply when private individuals attempt to sue the United States, rather than a federal officer, without its consent. *See Hartke v. Fed. Aviation Admin.*, 369 F. Supp. 741, 744 (E.D.N.Y. 1973) ("[T]he exceptions in *Larson* merely outlined those instances in which suits against individual officers would not be considered suits against the sovereign."). The Amended Complaint is devoid of any allegations that a federal officer took any action under RLUIPA or any other related statutory authority. (*See generally* AC.) Plaintiffs acknowledge that the second *Larson* exception requires an action by a federal officer, (*see* P's Opp. at 11 (quoting *Larson*'s statements that federal officers "cannot claim immunity" when "acting in excess of [their] authority or under an authority not validly conferred.")), yet they have failed to allege any facts suggesting that any federal officer exercised any powers here.

Moreover, as both the United States and KBT point out, the United States did not *intervene* in this action seeking to enforce RLUIPA against Plaintiffs. Rather, Plaintiffs named the United States as a defendant in the Amended Complaint. (US Reply at 2; ECF No. 39 ("KBT's Reply") at 3-4; AC ¶ 5 ("Defendant United States of America . . . is a country with its land primarily located in North America . . . .").) Before being named as a Defendant, the

10

Government had not taken any position in the case. Not only had it not attempted to enforce RLUIPA here, (US Mem. at 7-9; US Reply at 2), it could not do so because the statute does not permit enforcement against private persons such as Plaintiffs, *see* 42 U.S.C. § 2000cc-2(a) ("A person may assert a violation of this chapter as a claim or defense in a judicial proceeding and obtain appropriate relief against a government."); *id.* § 2000cc-5(4)(A) (RLUIPA's definition of "government" does not include private individuals who are not acting under the authority of a state or under color of state law).[3]

Because Plaintiffs fail to meet their burden to establish an applicable waiver or exception to the doctrine of sovereign immunity, the Court dismisses all claims against the United States without prejudice for lack of subject matter jurisdiction under Rule 12(b)(1). *See Hernandez v. Conriv Realty Assocs.*, 182 F.3d 121, 123 (2d Cir. 1999) ("[W]here a court lacks subject matter jurisdiction, it also lacks the power to dismiss with prejudice.").[4]

---

[3] Finally, while not raised by Plaintiffs in their brief, I consider whether the Administrative Procedure Act ("APA") or the Declaratory Judgment Act would confer any waiver of sovereign immunity or provide an alternative basis for jurisdiction. *See Nycal Offshore Dev. Corp. v. Haaland*, No.19-CV-966, 2021 WL 6049915, at *5-6 (D.D.C. Dec. 21, 2021). Neither does. *See Bank*, 2020 WL 4748320, at *4 ("[N]either the [APA] nor the Declaratory Judgment Act[] serve as a waiver of sovereign immunity."). The APA applies to federal agencies, *see Dotson*, 398 F.3d at 177 n.15 ("The United States's broad waiver of sovereign immunity in the Administrative Procedure Act . . . applies only to 'agencies . . . .'"); *Bank*, 2020 WL 4748320, at *4 ("The APA applies to agencies . . . ."), and allows for review of final agency action, *see Hyped Holdings LLC v. United States*, No. 22-CV-5340, 2023 WL 6121784, at *4 (E.D.N.Y. Sept. 19, 2023) ("[T]he APA only provides for judicial review of final agency action for which there is no other adequate remedy in a court."). Plaintiffs have not named any federal agencies as defendants nor alleged any agency action. And the Declaratory Judgment Act does not provide an independent source of federal jurisdiction. *See Bank*, 2020 WL 4748320, at *4 ("[T]he Declaratory Judgment Act is not an independent source of federal jurisdiction."); *Call-A-Head Corp. v. United States*, No. 21-CV-3234, 2022 WL 263164, at *2 (E.D.N.Y. Jan. 27, 2022) (Declaratory Judgment Act does not confer subject matter jurisdiction).

[4] Having found that the federal claims fail for lack of subject matter jurisdiction based on sovereign immunity, I need not address the parties' standing arguments, except to say that had I reached the issue, I would likely agree with Defendants that Plaintiffs lack standing. Their

11

Because the Court lacks subject matter jurisdiction over Plaintiffs' claims against the United States, I may not and do not address whether Plaintiffs have failed to state a claim under Rule 12(b)(6).  *See Exec. Park Partners LLC v. Benicci Inc.*, No. 22-CV-2560, 2023 WL 3739093, at *7 n.4 (S.D.N.Y. May 31, 2023) (citing *Ruhrgas AG v. Marathon Oil Co.*, 526 U.S. 574, 584 (1999) and *Sinochem Int'l Co. v. Malay. Int'l Shipping Corp.*, 549 U.S. 422, 430-31 (2007)).

B.  **Supplemental Jurisdiction Over the State Law Nuisance Claims**

Plaintiffs urge the Court to exercise supplemental jurisdiction pursuant to 28 U.S.C. § 1367 over the state law private and public nuisance claims against KBT.[5]  (Ps' Opp. at 22-23.) But "[w]here a district court dismisses all federal claims under Rule 12(b)(1) of the Federal

---

claimed injury, which must be (among other things) "actual or imminent," *Soule v. Conn. Ass'n of Schs., Inc.*, No. 21-1365, 2023 WL 8656832, at *5 (2d Cir. Dec. 15, 2023) (*en banc*) (citing *TransUnion LLC v. Ramirez*, 594 U.S. 413, 423 (2021)); *see Maddox v. Bank of N.Y. Mellon Tr. Co., N.A.*, 19 F.4th 58, 62 (2d Cir. 2021) (to the same effect) – meaning it either (1) "has actually happened" or (2) is "certainly impending," *Soule*, 2023 WL 8656832, at *5 – is based only on the assumption that the individuals who visit 62 Riverglen Drive, when it is operational, will have the same walking and driving habits as those who visit 56 Riverglen Drive.  The claimed injury must also be "fairly traceable to the challenged action of the defendant, and not the result of the independent action of some third party," *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992), yet the AC sets forth no action at all by the United States (as opposed to parties that have not been sued:  the Town and the individuals who allegedly create safety issues on Riverglen Drive).  Finally, Plaintiffs present no reason to believe that a ruling that RLUIPA is unconstitutional would cause the Town to violate the settlement agreement it reached with KBT, and thus they have not shown how their requested judicial relief would redress the alleged injuries.  *See Neary v. Weichert*, 489 F. Supp. 3d 55, 67 (E.D.N.Y. 2020) ("There is no redressability where such depends on an independent actor who retains broad and legitimate discretion that the courts cannot presume either to control or to predict."); *Taylor v. Bernanke*, No. 13-CV-1013, 2013 WL 4811222, at *10 (E.D.N.Y. Sept. 9, 2013) (no allegations that finalized government regulations would change independent banks' trading behaviors); *see also Coal. of Watershed Towns v. EPA*, 552 F.3d 216, 218 (2d Cir. 2008) ("Relief that does not remedy the injury suffered cannot bootstrap a plaintiff into federal court.").

[5] The Court cannot exercise diversity jurisdiction under 28 U.S.C. § 1332 because Plaintiffs and KBT are citizens of New York.  (*See* AC ¶¶ 1-4.)

Rules of Civil Procedure . . . the district court is *precluded* from exercising supplemental jurisdiction over the remaining state-law claims." *Cangemi v. United States*, 13 F.4th 115, 134 (2d Cir. 2021) (emphasis in original); *see Dawkins v. Brandy Libr. Lounge, LLC*, No. 23-CV-207, 2023 WL 8455896, at *5 (E.D.N.Y. Dec. 6, 2023) (a court "has no option to exercise supplemental jurisdiction" where plaintiff fails to allege proper subject matter jurisdiction); *Lee v. Doe*, No. 20-CV-6176, 2022 WL 204355, at *5 (S.D.N.Y. Jan. 24, 2022) ("[A] district court cannot exercise supplemental jurisdiction unless there is first a proper basis for original federal jurisdiction."). Because the Court does not have subject matter jurisdiction over any of the federal claims, the state law claims against KBT are dismissed without prejudice for lack of supplemental jurisdiction.

### C. Attorneys' Fees Under New York Anti-SLAPP Statute

KBT argues that New York's statute addressing strategic lawsuits against public participation – N.Y. Civ. Rights Law § 70-a, known as New York's "anti-SLAPP" law – mandates an award of costs and attorneys' fees in its favor. (KBT's Mem. at 21-24; KBT's Reply at 9-10.) But recent decisions from courts within this Circuit have concluded that New York's anti-SLAPP law does not apply in federal courts because its standard conflicts with Federal Rules of Civil Procedure 12 and 56. *See, e.g.*, *Editor's Pick Luxury LLC v. Red Points Sols. SL*, No. 22-CV-7463, 2023 WL 6385993, at *6 (S.D.N.Y. Sept. 29, 2023) (finding New York's anti-SLAPP law inapplicable in federal court and denying request for attorneys' fees under the statute); *Exec. Park Partners*, 2023 WL 3739093, at *7 (same); *Prince v. Intercept*, 634 F. Supp. 3d 114, 141-42 (S.D.N.Y. 2022) (same); *Kesner v. Buhl*, 590 F. Supp. 3d 680, 701 (S.D.N.Y. 2022) ("[G]ranting relief under [N.Y. Civ. Rights Law] § 70-a would require the Court to apply a state procedural standard that conflicts with the Federal Rules of Civil

Procedure."); *see also Waite v. Gonzalez*, No. 21-CV-2506, 2023 WL 2742296, at *12 (E.D.N.Y. Mar. 31, 2023) ("The Court is dubious as to whether New York's anti-SLAPP law applies in federal court."). Thus, the Court denies KBT's request for attorneys' fees and costs under New York's anti-SLAPP law.[6]

## IV.   CONCLUSION

For the reasons stated above, Defendants' motions to dismiss are GRANTED. The Clerk of Court is respectfully directed to terminate the pending motions, (ECF Nos. 36, 42), and close the case.

**SO ORDERED.**

Dated: January 3, 2024
White Plains, New York

_____
CATHY SEIBEL, U.S.D.J.

---

[6] For support that the anti-SLAPP law applies in federal court, KBT cites to *Goldman v. Reddington*, No. 18-CV-3662, 2021 WL 4099462, at *5 (E.D.N.Y. Sept. 9, 2021). (*See* KBT's Mem. at 21.) But the *Goldman* court addressed only whether it was appropriate for a magistrate judge to permit the defendant to amend the pleadings to assert an anti-SLAPP counterclaim, and declined to address at that stage whether such a claim would conflict with the federal rules. *See id.* at *3-5. As stated above, subsequent cases in this Circuit have concluded that it would.